UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TYREE BROOKS, #390929,

                    Petitioner,                           Case No. 11-cv-13675

v.                                                        Honorable Thomas L. Ludington

CATHLEEN STODDARD,

                    Respondent.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING
OBJECTIONS, DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING
CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN
FORMA PAUPERIS ON APPEAL**

Petitioner Tyree Brooks objects to Magistrate Judge Paul J. Komives's conclusion that

his petition for a writ of habeas corpus should be denied. Brooks filed his petition on August 23,

2011. *See* Pet'r's Pet. for Writ of Habeas Corpus, ECF No. 1. After being held in abeyance for

more than a year, the petition was referred to Judge Komives for report and recommendation on

August 9, 2013. *See* Order of Referral, ECF No. 21. Judge Komives issued a Report on April 2,

2014 recommending that the Court deny Brooks's petition. *See* Rep. & Rec., ECF No. 23.

Brooks makes seven objections to the Report. *See* Pet'r's Objs., ECF No. 26. First, the

evidence presented at his trial was insufficient to sustain a conviction of second degree murder.

Second, the trial court erred by excluding evidence of the fact that Brooks had been assaulted

prior to the night in question. Third, Brooks' constitutional rights were violated because the bar

video from the night in question was lost and he did not have the opportunity to show the video

to the jury. Fourth, Brooks's sentence was improperly calculated by the state trial court because

he was assessed 25 points for an intentional killing. Fifth, Brooks received ineffective assistance

from his trial counsel because his trial counsel did not test the victim's clothes for gunshot residue. Sixth, the trial court committed error by denying Brooks's motion for the appointment of new appellate counsel. Seventh, Brooks received ineffective assistance from his appellate counsel when his appellate counsel failed to raise the trial court's denial of Brooks's motion for new counsel on appeal (amongst, potentially, other claims of error Brooks maintained).

## I.

Petitioner Tyree Brooks was convicted of second degree murder in Washtenaw County Circuit Court on March 22, 2006. He is currently serving 40 to 60 years' imprisonment. See *People v. Brooks*, Case No. 271412, 2008 WL 2938549, at *1 (Mich. Ct. App. July 31, 2008). The Michigan Court of Appeals summarized the facts of his case as follows:

> [Brooks]'s conviction arises out of facts occurring in Ypsilanti in 2005. In the early morning hours of September 5, [Brooks] stood outside MJ's bar, with a crowd of 15 to 20 people. At some point, the victim left the bar to make a call on his cellular telephone. After he completed the call, the victim found himself surrounded by defendant and several of defendant's friends. One of the men hit the victim, and the victim fought back. At another point, the victim and defendant "squared up," facing each other, raising their fists, and prepared to fight. The bar's bouncer pulled the victim back inside, and told defendant and his friends to go home. As the bar closed, the crowd finally dispersed, and the bar owner escorted the victim to his car.
>
> Less than an hour later, defendant, the victim and the victim's friend, Lewis Fairley, met in the 600 block of Armstrong Street. The victim and Fairley removed their shirts. The victim and defendant argued, and then defendant shot a firearm at the victim. The first shot missed its intended target (the victim), and pierced the windshield of a parked car. Defendant resumed firing, and the next three shots hit the victim, first in the leg, which fractured two of his bones, then in the hip, and finally in the back, puncturing his heart. Defendant fled the crime scene, and the victim died. Later that morning, Fairley invaded the homes of several of defendant's relatives, looking for defendant, who had fled the state.

*Brooks*, 2008 WL 2938549, at *1. Brooks does not contest these core facts.

## A.

In addition to the general outline of the incident as provided by the Michigan Court of Appeals, Brooks alleges additional details concerning the events on September 5, 2005. First, he contends that his victim actually had a firearm in his possession when the two met in the 600 block of Armstrong Street. To support this contention he attaches to his petition an affidavit from the victim's friend, Lewis Fairley, who claims to have seen the victim draw a gun. Fairley also admits to disposing of the firearm shortly after the victim was shot by Brooks, presumably explaining why a firearm belonging to the victim was never recovered by police.

In addition, Brooks claims, and the evidence adduced at trial corroborates that MJ's bar, the scene of the first confrontation between Brooks and his victim, had a recording of the first confrontation between the two. A detective testified at trial to reviewing the recording, but that the recording was lost when the police went to recover it at a later date. The owner of MJ's was inexperienced with the newly installed video system at the bar and inadvertently allowed the recording of the confrontation to be taped over.

The State of Michigan also provides a thorough exposition of the facts in its response to Brooks's petition. *See* Resp't's Resp., ECF No. 18. The State explains that the police investigating the incident ran a gunshot residue test on the victim's clothing and concluded that the victim's gunshot wounds did not come from a close range. The medical examiner also reached the conclusion that the victim was turning away from Brooks as he was shot, indicating an attempt at fleeing.

**B.**

Just before standing trial, Brooks pled guilty to two counts: possessing a firearm as a felon and possessing a firearm in the commission of a felony. During the trial, the State called a witness that testified to having seen the shooting. The State also presented forensic evidence in

support of its claim that Brooks willfully and with intent murdered the victim. This evidence included the gunshot residue analysis and the forensic examination of the manner in which the victim was shot.

At trial, Brooks attempted to introduce evidence of having been assaulted prior to the shooting. He wanted to present evidence of an assault that took place a few months before the shooting and a second assault that occurred a few days before the shooting. Brooks intended to argue that he had a genuine fear of being assaulted again which resulted in his decision to open fire on the victim when confronted. The victim did not participate in those assaults and bore no relation to them. The trial court ruled that the evidence was inadmissible.

The jury returned a verdict of guilty on the charge of second degree murder. The trial court sentenced Brooks to 40 to 60 years' imprisonment for his murder conviction. Brooks' received significantly shorter sentences for his firearm possession convictions and does not challenge those sentences in his petition.

## C.

Brooks was appointed counsel for his appeal as of right. His counsel filed a brief with the Michigan Court of Appeals arguing that there was insufficient evidence to convict Brooks of second degree murder and that the trial court erred by excluding evidence of prior assaults on Brooks. Brooks filed a supplemental pro se brief. In that brief he argued that his constitutional rights were violated by law enforcement's failure to procure the video tape from the bar where the first confrontation with the victim occurred. He also argued that his due process rights were violated during sentencing because inaccurate information was used by the trial court in arriving at his sentence.

Eight months after Brooks's counsel filed a brief on his behalf with the Michigan Court of Appeals, Brooks filed a motion for the substitution of appellate counsel with the trial court. *See* Washtenaw County Circuit Court Docket Sheet, ECF No. 19-1. That motion was denied.

The Michigan Court of Appeals affirmed Brooks's conviction and sentence. *People v. Brooks*, Case No. 271412, 2008 WL 2938549 (Mich. Ct. App. July 31, 2008).

## II.

## A.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), governs all habeas applications filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326−27 (1997). In this case, Hardy's habeas application was filed in December 2012; therefore, his petition is governed by AEDPA.

AEDPA created new standards for review of state court decisions under 28 U.S.C. §2254(d). Paragraph (d), as amended, reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

Under §2254(d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide the basis for relief: (1) the "contrary to" clause or (2) the "unreasonable application" clause. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

Under the "contrary to" clause, a federal court may grant habeas relief in two different ways. First, if the state court arrives at a conclusion that contradicts the governing law set forth in Supreme Court cases. *Id.* Second, if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* As the Supreme Court explains, the words "contrary to" should be construed to mean "diametrically different, opposite in character, or mutually opposed." *Id.* at 405. Accordingly, "the state court's decision must be substantially different from . . . [relevant Supreme Court precedent]." *Id.*

A federal court may grant habeas relief under the "unreasonable application" clause in two different ways as well. First, "if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Id.* at 413. Second, if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context where it should apply. *Williams*, 529 U.S. at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court's decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 409−11. The Supreme Court explains that the writ of habeas corpus "is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S. Ct. at 786–87.

- 6 -

When analyzing whether a state court's decision is "contrary to" or an "unreasonable application" of clearly established federal law, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412. However, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). In addition, a court may not look to lower federal court decisions to formulate the relevant rule of law; but, it may look to lower federal courts decisions to assess the reasonableness of the state court's resolution of an issue. *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004). Accordingly, "[u]nder AEDPA, if there is no 'clearly established Federal law, as determined by the Supreme Court,' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)) (emphasis in original).

**B.**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the

Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). If the Court accepts a report and recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record.

### III.

As a preliminary matter, Brooks does not claim that Judge Komives erred in reaching any of the conclusions outlined in the Report. He states only that he "objects to United States Magistrate Judge Paul J. Komives [sic] Report and Recommendation filed in this matter on April 2, 2014." Pet'r's Objs. 1, ECF No. 26. That is essentially the extent of Brooks's engagement with the Report. His objections all take the following form: "Judge Komives reached a certain conclusion, I disagree for the same reasons previously stated." These are not objections but attempts at relitigating issues thoroughly analyzed in Judge Komives's Report. On this basis, Brooks's objections will be overruled. For the sake of completeness, however, Brooks's numbered objections—recitations of prior legal arguments—will be addressed individually. None of them have merit.

### IV.

Brooks makes seven objections. First, the evidence presented at his trial was insufficient to sustain a conviction of second degree murder. Second, the trial court erred by excluding evidence of the fact that Brooks had been assaulted prior to the night in question. Third, Brooks' constitutional rights were violated because the bar video from the night in question was lost and he did not have the opportunity to show the video to the jury. Fourth, Brooks's sentence was improperly calculated by the state trial court because he was assessed 25 points for an intentional killing. Fifth, Brooks received ineffective assistance from his trial counsel because his trial

counsel did not test the victim's clothes for gunshot residue. Sixth, the trial court committed error by denying Brooks's motion for the appointment of new appellate counsel. Seventh, Brooks received ineffective assistance from his appellate counsel when his appellate counsel failed to raise the trial court's denial of Brooks's motion for new counsel on appeal (amongst, potentially, other claims of error Brooks maintained).

## A.

Brooks's first allegation of error in Judge Komives's Report concerns Brooks's claim that there was insufficient evidence presented at trial to convict him of second degree murder. As Brooks acknowledges, this Court must "view[] the evidence in the light most favorable to the prosecution[.]" *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[E]vidence is sufficient to support a conviction if . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 319) (internal quotation marks omitted). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Under Michigan law, "[t]o prove second-degree murder, the prosecutor must prove that there was (1) a death, (2) caused by defendant, (3) with malice, and (4) without justification or excuse." *Brooks*, 2008 WL 2938549, at *1. "Malice is negated where the defendant 'killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions.' Adequate provocation is that which would cause a reasonable person to lose control." *Brooks*, 2008 WL 2938549, at *2 (quoting *People v. Mendoza*, 664 N.W.2d 685, 690 (Mich. 2003)) (internal quotation marks and citations omitted). Brooks argues that there was insufficient

evidence at trial for the jury to conclude that he acted with malice sufficient to constitute second degree murder.

Petitioner recounts the facts pertaining to his conviction as follows:

There was no dispute at trial that the decedent, was murdered during the early morning hours of September 5, 2005. Petitioner stood outside MJ's bar, with a crowd of 15 to 20 people. At some point, the victim left the bar to make a call on his cellular telephone. After he completed the call, the victim found himself surrounded by Petitioner and several of Petitioner's friends. One of the men hit the victim, and the victim fought back. At another point, the victim and Petitioner "squared up," facing each other, raising their firsts, and prepared to fight. The bar's bouncer pulled the victim back inside, and told Petitioner and his friends to go home. As the bar closed, the crowd finally dispersed, and the bar owner escorted the victim to his car. In addition, less than an hour later, Petitioner, the victim and the victim's friend, Lewis Fairley, met in the 600 block of Armstrong Street. The victim and Fairley removed their shirts. The victim and Petitioner argued, and then Petitioner shot a firearm at the victim. The first shot missed its intended target (the victim), and pierced the windshield of a parked car. Petitioner resumed firing, and the next three shots hit the victim, first in the leg, which fractured two of his bones, then in the hip, and finally in the back, puncturing his heart. Petitioner fled the crime scene, and the victim died.

Pet'r's Objs. 2-3, ECF No. 26 (sic throughout). Brooks claims, on these facts, that "[t]he actions of the victim and Fairley were consistent with provocation." *Id*. at 3. Whether or not they are, that is not the standard for analyzing Brooks's claim on habeas review. The pertinent question is if any rational juror could conclude that Brooks was not provoked but with malice and without lawful justification or excuse caused, by his own act, the death of his victim. That burden is easily met. Brooks concedes in his factual recitation that the victim was not armed and does not even allege physical contact between him and the victim prior to the shooting. Brooks also concedes that throughout the night he was the initial aggressor, not the victim. Brooks's claim is without merit and his objection will be denied.

**B.**

Brooks next claims that the trial court committed error when it excluded testimony that he had been assaulted prior to the night of the murder. Brooks contends that he was denied his

- 10 -

right to present evidence. Indeed, the Sixth Amendment protects a defendant's right to offer testimony and present evidence. *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988). A trial court denies this right where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *United States v. Scheffer*, 523 U.S. 303, 315-17 (1998) (plurality opinion)).

Here, Brooks presumably takes issue with the trial court's exclusion of evidence that he was assaulted—not by the victim but by third parties—a few months before the shooting and a few days before the shooting. Brooks does not make this argument in his objections, stating only that evidence of bias was excluded that "deprived the trier of fact of consideration of facts which clearly would have undermined the credibility of his testimony by demonstrating his overall malice, vindictiveness, and hostility against Petitioner." Pet'r's Objs. 6, ECF No. 26. In support of his argument, Brooks cites to cases concerning the right to confrontation and the right to present a defense. But he does not indicate how the introduction of evidence of his prior beatings (of which the victim was likely unaware) would have demonstrated bias on the part of the victim. It does not follow and Brooks does not endeavor to connect the two.

The state appellate court concluded that "evidence of the assaults was not relevant or admissible to prove adequate provocation or that defendant honestly and reasonably believed he was in imminent danger of death or great bodily harm and that it [was] necessary for him to exercise deadly force." *People v. Brooks*, Case No. 271412, 2008 WL 2938549, at *3 (Mich. Ct. App. July 31, 2008) (internal quotation marks omitted) (emendation in original). This decision and the decision of the trial court to exclude the evidence were not contrary to law. Establishing a claim of provocation or self-defense requires that "the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm."

- 11 -

*People v. Heflin*, 456 N.W.2d 10, 18 (Mich. 1990). Assaults by a third party days and months before is not relevant to the threat he would have felt from the victim.

Furthermore, as Judge Komives explained, the Michigan law of self-defense "normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *People v. Riddle*, 649 N.W.2d 30, 34 (Mich. 2002). To the extent Brooks felt himself to be under threat of imminent death or significant bodily harm, he could have taken numerous avenues short of firing at the victim. The victim was unarmed and no physical confrontation had taken place at the time Brooks brandished a firearm. Brooks cannot meet the necessity requirement of self-defense under Michigan law even if he was able to show that the evidence should have been admitted.

Perhaps Brooks's claim relates to the trial court's decision to exclude evidence that the victim's friend, Fairley, committed a series of home invasions after the murder in an attempt to find Brooks. This also was not error and cannot constitute provocation under the test outlined above. It defies all concepts of time and causation to conclude that activity occurring after the murder could justify the murder itself. Brooks does not explain this conundrum. Brooks's objections relating to the trial court's exclusion of evidence will be overruled.

**C.**

Next, Brooks claims that his constitutional rights were violated when the state destroyed video evidence from the night of the murder. Originally, Brooks also challenged his ability to confront the officer that testified to the contents of the video. Brooks does not make that claim in his objections, likely because it is specious. Brooks was able to cross examine the officer during the trial and admits as much in his objections. *See* Pet'r's Objs. 7, ECF No. 26 ("Petitioner was

- 12 -

allowed to challenge the officer's description of what he saw on the video tape."). Thus, Brooks's only contention is that the video should have been shown to the jury. The objection need not be scrupulously analyzed. Brooks, at no stage of his legal challenge: trial, appeal, and habeas review; presented evidence that the state destroyed the video. He has not challenged the explanation of the owner of MJ's bar that, due to inexperience with the bar's video recording technology, the video was taped over.

Brooks's only claim is that the police should have acted more quickly to seize the video and failure to act faster violated his constitutional rights. He does not offer any authority that this equates destruction sufficient to trigger *Brady* analysis. But even assuming, without deciding, that this could trigger analysis under *Brady v. Maryland*, 373 U.S. 83 (1963), Brooks cannot establish materiality. Brady requires proof that the suppressed or destroyed evidence "would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Brooks only contends that he was "prevented from showing the jury the aggressive nature of the victim's behavior on that night." Pet'r's Objs. 7, ECF No. 26. This does not constitute a Brady violation. In any event, in light of the analysis of Brooks's sufficiency of the evidence claim, a reasonable juror witnessing the "aggressive behavior" of the victim hours before the shooting could still conclude that Brooks's actions amounted to second degree murder. Brooks's objection will be overruled.

## D.

Brooks's next argument focuses on the sentence imposed by the state trial court. He argues that the state trial court improperly assessed him 25 points for Offense Variable 6 when he should have actually been assessed only 10. This claim is not cognizable on habeas review. *Terry v. Trippett*, 62 F.3d 1418 (6th Cir. 1995) ("[A] claim that the trial court violated state law

when sentencing a prisoner is not cognizable in a habeas corpus proceeding."). But even if it were, there was no error. Brooks's claim rests on the assumption that he was provoked into the killing or was acting in self-defense. The assumption is baseless in light of the foregoing, see supra § III.A. Brooks was appropriately assessed 25 points under Offense Variable 6 which requires a finding that "[t]he offender had unpremeditated intent to kill, had the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." State of Michigan, SENTENCING GUIDELINES MANUAL 35.

### E.

Fifth, Brooks asserts that he received unconstitutionally ineffective assistance from his trial counsel. This is so, according to Brooks, because his trial counsel did not test the victim's clothing for gunshot residue so as to potentially substantiate Brooks's claim that the victim shot first. *See* Pet'r's Objs. 10, ECF No. 26. This claim is baseless.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the familiar *Strickland* standard by demonstrating that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound . . . strategy." *Id*. at 689. In assessing deficient performance, "reviewing courts must take care to avoid 'second-guessing' strategic decisions that failed to bear fruit." *Lundgren v. Mitchell*, 440 F.3d 754, 769–70 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Here, however, the decision not to test the clothing

- 14 -

of the victim for gunshot residue was not a strategic one. The clothing had already been tested by law enforcement and no gunshot residue was found. *See* March 21, 2006 Trial Tr. 110, ECF No. 19-5. A detective even testified under oath to the fact that a gunshot residue test of the victim's clothing came back negative. It would have been a waste of the defense's time and resources to further pursue that inquiry.

Even if the decision was one that required the exercise of trial strategy, it was reasonable to decide not to test the victim's clothes. There was no evidence adduced at trial or prior to trial that the victim had a gun. The only evidence that exists now is Brooks's self-serving testimony and the now altered and self-serving testimony of the victim's friend, Lewis Fairley. *See* Aff. of Lewis Fairley, Pet'r's Pet. for Habeas Corpus 36-37, ECF No. 1-1.[1] This was not evidence that was available to Brooks's trial counsel. Brooks's objection will be overruled.

### F.

Brooks next makes two distinct claims under one heading. First, he argues that the trial court committed constitutional error in violation of his Sixth Amendment rights by denying his motion to substitute his appellate counsel.[2] That claim will be addressed first.

The Sixth Amendment does not guarantee a right to appellate counsel. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 161 (2000). Any right to appellate counsel is secured by the Due Process Clause. *Id*. The Supreme Court has not articulated the circumstances under which the Due Process Clause mandates the substitution of appellate

---

[1]   In any event, even if Fairley's new testimony is credible, he does not state that the victim actually fired his weapon, just that the victim brandished one. It was a third party who began the shooting. Thus, Fairley offers no support for the claim that the victim shot first.

[2]   It may be that Brooks is only alleging that appellate counsel was ineffective for not challenging the trial court's decision. That is, Brooks may not be directly challenging the trial court's denial of his motion to substitute. In any event, Brooks's objections, devoid as they are of specificity concerning the actual facts of his case, will be liberally construed to include an objection to the trial court's decision.

- 15 -

counsel on request from a defendant. Thus, Brooks cannot establish that the trial court's denial of his substitution motion was contrary to Supreme Court precedent.

Even applying law concerning substitution of trial counsel, Brooks's claims do not succeed. "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). As a result, a defendant seeking substitution of counsel must show good cause in support of substitution. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Whether a court abused its discretion in denying a motion to substitute requires consideration of

> . . . the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. . . . Further, [c]onsideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.

*United States v. Saldivar-Trujillo*, 380 F.3d 274, 277-78 (6th Cir. 2004) (quoting *Iles*, 906 F.2d at 1130 n.8). Brooks claims that he had no communication with his appellate counsel, despite attempting numerous times to open lines of communication. He states that he began writing letters to his appellate counsel as early as three weeks after his appointment, which was six months before his counsel filed an appellate brief on his behalf. But Brooks did not move for substitution until months after the appellate brief was filed. "[A] court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988). Brooks's delay in seeking new counsel smacks of dilatory maneuvering. The trial court was within its discretion to deny the motion for substitution. Brooks's objection will be overruled.

**G.**

- 16 -

Lastly, Brooks argues that his appellate counsel was constitutionally ineffective for failing to raise any of these claims of error on appeal. "A court is free to 'dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,' as opposed to first determining whether counsel's performance was deficient." *Sanders*, No. 11-1712, 2013 WL 3214962, at *12 (quoting *Strickland*, 466 U.S. at 697). None of Brooks's claims have merit as demonstrated by Judge Komives's thorough and well-reasoned Report and this Court's de novo review of those areas to which Brooks objects. Thus, any claim that was not raised by Brooks's appellate counsel (and his appellate counsel did raise important claims on appeal) did not result in prejudice to Brooks. This objection will be overruled.

## V.

The petition for a writ of habeas corpus will be denied. Petitioner will also be denied a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal

- 17 -

constitutional right. *Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). Because Brooks

has not made a substantial showing of the denial of a constitutional right he is not entitled to the

issuance of a certificate of appealability on this claim. *See Heidelberg v. Illinois Prisoner Review

Bd.*, 163 F.3d 1025, 1025-1027 (7th Cir. 1998). The Court will also deny Petitioner leave to

proceed *in forma pauperis* on appeal because the appeal would be frivolous. 28 U.S.C.

§ 1915(a)(3).

## VI.

Accordingly, it is **ORDERED** that the Report and Recommendation, ECF No. 23, is

**ADOPTED**.

It is further **ORDERED** that Petitioner Tyree Brooks's Objections, ECF No. 26, are

**OVERRULED**.

It is further **ORDERED** that Petitioner Tyree Brooks's Petition for a Writ of Habeas

Corpus, ECF No. 1, is **DENIED and DISMISSED with prejudice**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED**.


Dated: November 16, 2015                                s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on November 16, 2015.

                              s/Michael A. Sian
                              MICHAEL A. SIAN, Case Manager